[File No. 6839.]

RUTH WISETH, Appellant, v. TRAILL COUNTY TELEPHONE COMPANY, a Corporation, Respondent.

(5 NW (2d) 307.)

Opinion filed August 14, 1942.

*S. Theodore Rex* and *C. F. Peterson,* for appellant.

*Charles H. Shafer,* for respondent.

BUER, Ch. J.   This action was before us in 70 ND 44, 291 NW 689. The present case was tried to the court without a jury.   The suit is for the recovery of wages under the minimum wage law, covering a period of years from 1931 until 1938.

The plaintiff was in the employ of the defendant corporation from

January, 1929, until April, 1938, as a telephone operator in the Hillsboro exchange. The action was not commenced until April, 1938, and because of the issues raised by the pleadings, her claim is subdivided into three sections, the third being the only one in issue.

This section deals with the claim of the plaintiff for $992.50, as underpayment for the remainder of the term of her employment. The court found against her on this proposition. Judgment was entered in accordance therewith, and the plaintiff appealed.

The specifications of error center around this proposition: that the "court erred in not ordering a judgment for plaintiff's claim for underpayment of wages subsequent to the 7th day of April, 1933."

The defendant claims: that from April, 1933, on, it had been and was classified as a rural telephone exchange, and was operating thereunder; that it entered into a contract with the plaintiff for her employment as telephone operator, under a wage contract satisfactory to both; that under this contract plaintiff worked as its employee in a rural telephone exchange and was paid according to the terms of the contract and therefore they owe her nothing.

Plaintiff admits she received wages during this period, but asserts the defendant was not a rural telephone exchange and that the provisions of the minimum wage order applied, and therefore the court erred in not entering judgment in the further sum of $992.50.

On the trial of this case all of the testimony taken in the previous case was offered in evidence and received without objection.

In February, 1922, the workmen's compensation bureau issued an order known as "Telephone Occupation Minimum Wage Dept. Order No. 5." This order regulated and covered the wages, hours, and conditions under which female employees shall work in telephone exchanges. Both sides rely on this Order No. 5 (Ex. 19), which became effective April 4, 1922, and which provides, among other things:

"No employer shall employ any experienced woman in any telephone exchange in the state of North Dakota in towns of 1800 population and over at a weekly wage rate of less than $14.00; nor in towns of under 1800 population at a weekly wage rate of less than $12.00. . . .

"In towns or cities of less than 500 population and in rural telephone exchanges, arrangements of operator's schedules, maximum number of

hours per day and the maximum number of days per month shall be arrived at by mutual agreement between the employer and the employees; such agreement to be made known to the Bureau."

Section 396b15 Supp. gives to any woman worker who "shall be paid by her employer less than the minimum wage to which she is entitled under or by virtue of an order of said bureau," the right to recover in a civil action "the full amount of her said minimum wage less any amount actually paid to her by said employer, together with such attorneys' fees as may be allowed by the court; and any agreement for her to work for less than such minimum wage shall be no defense to such action."

The burden of proof is upon the defendant to show it "is a rural telephone exchange." The defendant is a corporation operating three telephone exchanges—at Galesburg, Clifford, and Hillsboro respectively. During all of the time involved the population of Hillsboro was approximately 1,300. The Hillsboro exchange is situated within the city, employs three operators and for the ten years preceding the date of trial, according to the testimony of the manager, has "always had more rural telephones than we had in the city of Hillsboro during that time."

In August, 1931, the corporation made written application (Ex. E-2) to the bureau to be classified as a rural telephone exchange and by Ex. F-2, showed it had 215 local subscribers and 304 rural subscribers. This application was submitted to the commissioners and o.k.'d by the commissioners in rotation. Apparently this was for the purpose of investigation for in October, 1931, the secretary of the Minimum Wage Department notified the defendant by Ex. A-2 that "the bureau would like a little more definite information as to the reason for wishing to make this change. As Hillsboro is a town of approximately 1,500 people, it does not appear on the face of the matter that conditions of work at the exchange would be so light as to justify its being exempt from operation of the 8-hour law simply because there are more rural subscribers than town subscribers. . . . We shall appreciate having details which will show the necessity for such a change in classification at this time."

It is clear from this letter that the o. k. given by each commissioner individually was not an authorization for change.

In reply to this letter from the secretary, the defendant in November, 1931, wrote (Ex. G-2) saying it did not "have need for 4 operators neither does our income warrant the expense of the 4 operators at this exchange we desire the rural exchange classification as a temporary relief measure. We propose to employ 3 operators and one of these to be the chief operator. . . ."

To this letter the chairman of the bureau replied (Ex. B-2): "I don't know how it would be possible for us to designate Hillsboro as a rural telephone. Your town is far over the five hundred mark, but, of course, you might be able to show that you have more rural telephones on your line than you have city telephones. If such is the case, I would suggest that you place the matter in the form of an affidavit, after which we shall be glad to give consideration to your application."

The exhibits introduced as evidence show no further proceedings until March 16, 1933, when the corporation, through its attorney, addressed the Minimum Wage Department (Ex. H-2), calling attention to the previous correspondence and saying: "However, the matter was allowed to drop at that time after the affidavit and information had been sent you and nothing has been done since. . . ."

To this letter was attached the affidavit of the manager of the defendant corporation in which he sets forth (Ex. I-2) that, "under existing economic and financial condiitons it is impossible . . . to employ this number of operators (4 operators) and at the same time conform with the regulations of the Minimum Wage Department . . . we therefore respectfully petition and request that the Hillsboro Exchange of the Traill County Telephone Company be classified in the future as a Rural Exchange. . . ." At the same time an accompanying affidavit (Ex. J-2) showed there were 221 local subscribers and 279 rural subscribers.

On receipt of this letter with accompanying affidavits, the secretary of the Minimum Wage Department, by letter (Ex. L-2), advised the members of the Bureau of the correspondence, stating: "After studying both files it is evident that the conditions with respect to local and rural subscribers are about the same now as they were in 1931. Will you kindly advise your wishes in the matter." This letter is marked

"approved" by one of the members and "ok" by another, and this "ok" and approval were all the action taken in the matter.

On April 7, 1933, the secretary of the Minimum Wage Department wrote to the counsel for defendant (Ex. C-2) stating, in part, "This letter will be your authority to advise your client, the Traill County Telephone Company, that it will be permissible to classify their exchange as 'rural' in the future and they may be governed by the rules regulating such a classification."

This is a resume of what the record shows in regard to change in classification.

Order No. 5 does not define the term "rural telephone exchange" and, from the correspondence between the bureau and the defendant it is clear neither of them considered the defendant a rural telephone exchange even though the manager of defendant corporation stated in his affidavit, under date of 1931, " . . . that in every year during the last twenty years the number of rural subscribers has always exceeded the number of local or city subscribers." Evidently at that time neither the bureau nor the defendant assumed the mere fact there were more rural subscribers than city subscribers would make the Hillsboro exchange a rural exchange.

That telephone systems, operating in cities and villages (no matter what may be the population of the city or village) are not considered rural exchanges is indicated by Order No. 5. For the purpose of establishing minimum wages and minimum hours the order differentiates cities by population, above or below 1,800. The order makes provision for waiver of some provisions in towns and cities of less than 500 population and yet does not classify exchanges in such cities or towns as rural exchanges. It gives to exchanges in cities and towns of less than 500 the same right of free bargaining that it gives to rural telephone exchanges. It does not make such exchange a rural exchange. For the purpose of free bargaining a rural exchange and an exchange in a city or town of less than 500 have the same right; but in both cases an agreement resulting from free bargaining must "be made known to the bureau." Because of its population the Hillsboro exchange could not have the right of free bargaining given in the order. To get this right the order would need to be amended, then "be made known to the

Bureau" evidently for its approval; and there is nothing to show this agreement was ever "made known to the bureau."

There is nothing in the record whatever to show that Order No. 5 was ever modified, or amended by the bureau. W. H. Stutsman, a member of the bureau from 1929 to January, 1933, and a witness for the defendant, testified as to the procedure in formulating orders and amending them. He testified that he "handled the matters that came before the Minimum Wage Department," that such an order as Order No. 5 would not be changed "without a special hearing of some kind." He said notice of proposed change would be given to the public, to employers, and to employees. The record does not show any such notice ever given.

W. C. Preckel was a member of the bureau from 1930 until January, 1937. He testified that when the secretary of the Minimum Wage Department, in his letter (Ex. L-2), informed the commissioners of the requests of the defendant, witness endorsed the letter on April 4, 1933, "ok WCP" indicating that he agreed to a classification of the defendant as a rural telephone exchange, that this same exhibit was marked "Approved REW" and that REW were the initials of R. E. Wenzel, a member of the bureau at that time, that therefore Ex. L-2 was endorsed by two of three members of the bureau, intending, thereby, to grant the application for change of classification. It is upon these endorsements by two of the commissioners acting individually, the secretary based his letter to the defendant (Ex. C-2), in which he stated: "This letter will be your authority to advise your client that it will be permissible to classify your exchange as 'rural' in the future. . . ."

Commissioner Preckel testified there was no formal meeting of the entire commission. He said the method was more elastic, and that the commission had a lot of business matters to consider. When asked "is it true that your secretary was authorized to take care of the detailed work of the commission with reference to the minimum wage matters?" he answered, "Yes."

At the time Order No. 5 was promulgated, the workmen's compensation bureau was "authorized and empowered to ascertain and declare . . . Standards of minimum wages for women in any occupation in the state . . . To prepare, adopt and promulgate rules and regu-

lations for the carrying into effect of the foregoing provisions of this act, including rules and regulations for the selection of members and the mode of procedure of conferences; . . ." Section 396b2 Supp.

The bureau was authorized to call a conference "composed of not more than three representatives of the employers in said occupation and of an equal number of the representatives of the employees in said occupation and of not more than three disinterested persons representing the public and of one or more commissioners." Section 396b6 Supp. The bureau could submit to such conference some subject for inquiry and upon reference of any recommendations made by the conference, the bureau, if it approved any recommendation, was required to give notice of "a public meeting at which all persons in favor of or opposed to said recommendations will be given a hearing; and, after said publication of said notice and said meeting, said bureau may, in its discretion, make and render such an order as may be proper or necessary to adopt such recommendations and carry the same into effect. . . ." Section 396b7 Supp.

There is nothing in the record to show that the bureau, as a bureau, prepared or adopted any modification or amendment of this Order No. 5, that any conference was called to consider the reclassification of workers in telephone exchanges or that the bureau ever decided to amend Order No. 5.

In the former action (70 ND 44, 51, 291 NW 689) reference was made to the so-called "Emergency Amendment to Telephone Order No. 5," issued by the commissioner on October 15, 1936. This officer had jurisdiction over the subject matter on and after 1935. There is no evidence showing any conference, meeting or any foundation for the action of the commissioner of agriculture and labor, in making this amendment. Hence defendant never was a rural telephone exchange.

The court was in error in holding that the requirements regarding minimum wages did not apply in favor of the plaintiff after April 4, 1933. Under the testimony in the case there is no dispute as to the minimum amount of wages to which plaintiff was entitled under Order No. 5. The record shows this amounted to $992.50. The court found for the plaintiff in the sum of $172.50, with interest and costs, including the attorney's fee because of underpayment prior to April, 1933,

but this judgment should be amended to include this further sum of $992.50, with interest, from April 1938; and as so amended, the judgment for the plaintiff is affirmed.

CHRISTIANSON, MORRIS, BURKE, and NUESSLE, JJ., concur.